IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| In re | ) | CIVIL NO. 14-00548 SOM/RLP |
| | ) | |
| SANDRA JO ROBERTS, | ) | ORDER AFFIRMING BANKRUPTCY |
| | ) | COURT ORDERS |
| Debtor/ | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ASSOCIATION OF APARTMENT | ) | |
| OWNERS OF LIONA KONA et al., | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

**ORDER AFFIRMING BANKRUPTCY COURT ORDERS**

I.      **INTRODUCTION.**

Sandra Jo Roberts, proceeding <u>pro</u> <u>se</u>, appeals from the bankruptcy court's "Order Denying Debtor's Motion to Impose the Automatic Stay" and the subsequent "Order Denying Debtor's Motion to Reconsider."[1]  <u>See</u> ECF No. 1-1.

This appeal stems from consecutive Chapter 13 bankruptcy cases filed by Roberts, <u>In re Roberts</u>, Bankr. D. Haw. No. 13-01094 ("<u>Roberts I</u>"), and <u>In re Roberts</u>, Bankr. D. Haw. No.

---

[1] Roberts's appeal may be moot.  A review of state court, county property tax, and bureau of conveyances records suggests that the property at issue may have been sold via a nonjudicial foreclosure sale.  However, because Roberts makes no mention of a sale in her opening brief, and neither party has filed documentation confirming a sale, the court proceeds to address the merits of the appeal.  <u>See In re Ortola</u>, No. BAP CC-11-1222-KIPAH, 2011 WL 7145793, at *3 n.5 (B.A.P. 9th Cir. Dec. 16, 2011) (addressing merits of appeal when appeal may have been rendered moot by sale to bona fide purchaser for value but parties failed to discuss mootness).

14-01144 ("Roberts II").  Both cases sought to avert the
nonjudicial foreclosure of her condominium unit by the
condominium association for nonpayment of maintenance fees.

The first case was dismissed after Roberts failed to
present a confirmable plan, despite having been given the
opportunity to submit five proposed plans over a year, each of
which was rejected by the bankruptcy court.  After Roberts I was
dismissed, Roberts immediately filed the instant bankruptcy case.
Thereafter, she asked the bankruptcy court to continue the
automatic stay in effect pursuant to 11 U.S.C. § 362.  The
bankruptcy court denied the motion because it was filed outside
the statutorily mandated period, and because Roberts failed to
demonstrate that the second case was filed in good faith.
Roberts moved for reconsideration, which the bankruptcy court
also denied.

The court affirms both orders, opting to do so without
a hearing pursuant to Local Rule 7.2(d).

II.      **BACKGROUND.**

These proceedings stem from Roberts's previous
ownership of a unit at the fifteen-unit Liona Kona condominium
project located in Kailua-Kona, Hawaii.  See ECF No. 15, PageID
#s 65-66.  Sometime in 2011, Roberts stopped paying maintenance
fees.  In October 2012, with Roberts still failing to make
payments, the AOAO notified her that a lien had been placed on

her property.  See id., PageID # 66.  On January 17, 2013, the
AOAO, seeking to collect the amounts Roberts owed, recorded its
Notice of Default and Intention to Foreclose.  Id.  The AOAO
thereafter sent Roberts a Notice of the Association's Non-
Judicial Foreclosure Under Power of Sale to Appellant on April
17, 2013.  Id.  Five days before the auction, Roberts filed a
Chapter 13 Voluntary Petition in bankruptcy court.  See Roberts
I, Dkt. # 1.

### A.  **Roberts I**.[2]

On her Summary of Schedules in Roberts I, Roberts
listed total assets of $258,442.97, total liabilities of
$136,263.12, average monthly income of $3,700.00, and average
monthly expenditures of $2,800.00.  See id., Dkt. # 12.  Among
her assets were several parcels of real property in Hawaii and
Florida, including the apartment at Liona Kona.  See id., Dkt.

Over the course of a year, Roberts tried, but failed,
to propose a confirmable Chapter 13 repayment plan.  See id.,
Dkt. # 120.  After rejecting Roberts's fifth proposed plan, the
bankruptcy court, on June 6, 2014, dismissed her petition.  See
id., Dkt. # 119.  A Final Decree closing Roberts's case was
entered on September 2, 2014.  See id., Dkt. # 126.

---

[2] Although Roberts was initially represented by counsel, see
Roberts I, Dkt. # 1, her attorney was later granted leave to
withdraw, given his irreconcilable differences with Roberts.  See
id., Dkt. #s 19, 40.  Thereafter, Roberts has proceeded pro se.

**B.   Roberts II**.

Roberts filed a second Chapter 13 case on August 25, 2014, again proceeding pro se.  See Roberts II, Dkt. # 3. Roberts's financial situation had apparently worsened since Roberts I.  On her Summary of Schedules, Roberts listed total assets of $260,040.38, total liabilities of $148,181.10, average monthly income of $3,200.00, and average monthly expenditures of $2,792.24.  See id., Dkt. # 10.  Although her monthly expenditures had stayed the same as in her Schedules in Roberts I, her total debt had increased and her monthly income had decreased by approximately $500.00.  Compare Roberts II, Dkt. # 10, with Roberts I, Dkt. # 12.  In addition, the property value of two of her properties was impaired by lava flows in the vicinity.  See Roberts II, Dkt. # 82.

If a debtor files a bankruptcy case when another bankruptcy case was pending within a year prior to the filing of the second case and the first case was dismissed, the automatic stay terminates on the thirtieth day after the filing of the second case.  See 11 U.S.C. § 362(c)(3)(A).  The bankruptcy court may extend the thirty-day stay if a party files a timely motion showing that the second bankruptcy case was filed in good faith. See id. § 362(c)(3)(B).

On October 2, 2014, well after the thirty-day stay had expired, Roberts filed a one-page motion to extend the stay.  See

Roberts II, Dkt. # 18.  In her motion, Roberts argued that the automatic stay should be extended with respect to her Liona Kona apartment because (1) the AOAO allegedly did not have the legal capacity to oppose the motion, given its involuntary dissolution as a corporation in 2002; (2) its attorneys had allegedly charged excessive fees compared to similarly situated creditors; and (3) these fees made it "virtually impossible for Debtor to create a workable Chapter 13 Plan" in Roberts I.  See Roberts II, Dkt. # 30.  Her motion accused the AOAO of other improprieties, such as permitting tenants that were "a gypsy crime family."  Id.

The bankruptcy court denied Roberts's motion to extend the stay because (1) the motion was untimely filed, and (2) Roberts failed to prove by clear and convincing evidence that Roberts II was filed in good faith.  See ECF No. 1-1, PageID # 6.

Roberts filed a motion for reconsideration of the decision, arguing that the bankruptcy court had not given due consideration to her argument that the AOAO lacked standing to foreclose on Roberts's property, given the AOAO's alleged lack of legal capacity to be a valid creditor.  See Roberts II, Dkt. # 36.  Denying the motion for reconsideration, the bankruptcy court said that Roberts had failed to offer any relevant evidence, or to make "any pertinent arguments that she did not make or could not have made" previously.  See ECF No. 1-1, PageID # 7.

### C.    State Court Proceedings.

On February 4, 2015, Roberts unsuccessfully sought an injunction in state court to prohibit the nonjudicial foreclosure sale of her property.  See Roberts v. Emery, Civ. No. 3CC15-1-00044K (Haw. 3d Cir. Ct. Feb 4, 2015).

On April 16, 2015, the AOAO filed an action in state court for summary possession of Roberts's property.  See Liona Kona, Inc. AOAO v. Roberts, Civ. No. 3RC15-1-00109H (Haw. 3d Cir. Ct. Apr. 16, 2015).  At a hearing on July 7, 2015, the state court orally ordered the issuance of a writ of possession to take effect on July 10, 2015.  See id.

Shortly after the hearing on July 7, 2015, Roberts filed (1) an ex parte motion asking the state court to stay entry of the writ of possession; and (2) an emergency motion asking the state court to reconsider its judgment.  See id.  On July 8, 2015, the ex parte motion was denied.  See id.  At a hearing on July 21, 2015, the emergency motion was orally denied.  See id.

### D.    Roberts's Appeal.

On November 13, 2014, Roberts appealed the bankruptcy judge's orders that respectively denied her motion to impose stay and her motion for reconsideration.  See ECF No. 1, PageID # 3.  This appeal was transferred from the Bankruptcy Appellate Panel to this court on December 8, 2014.  See id., PageID # 1.

On May 22, 2015, this court issued an order to show cause why this appeal should not be dismissed for lack of prosecution because Roberts had not timely filed an opening brief.  <u>See</u> ECF No. 7.  On June 8, 2015, Roberts filed a motion seeking an enlargement of time to file her opening brief.  <u>See</u> ECF No. 8.  Because Roberts indicated that she wanted to proceed with this appeal, the court ordered that she file her opening brief by July 9, 2015, <u>see</u> ECF No. 9, then sent her a courtesy reminder by e-mail.  Because no opening brief was filed by the deadline, the court dismissed the appeal for lack of prosecution. <u>See</u> ECF No. 11.  Judgment was entered on July 10, 2015.  <u>See</u> ECF No. 12.

On July 13, 2015, three days after judgment had been entered in this appeal, Roberts filed her opening brief.  <u>See</u> ECF No. 13.  Recognizing that Roberts is <u>pro</u> <u>se</u>, the court vacated the judgment and now proceeds to address the merits of this appeal.  <u>See</u> <u>id.</u>

III.      **STANDARD OF REVIEW.**

This court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law <u>de novo</u>.  <u>See</u> <u>In re Kimura (United States v. Battley)</u>, 969 F.2d 806, 810 (9th Cir. 1992) ("The court reviews the bankruptcy court's findings of fact under the clearly erroneous standard and its conclusions of law de novo.").

This court reviews for abuse of discretion bankruptcy court orders denying motions for reconsideration.  In re O'Kelley, 420 B.R. 18, 22 (D. Haw. 2009) (citing In re Weiner, 161 F.3d 1216, 1217 (9th Cir. 1998), for proposition that Ninth Circuit reviews bankruptcy court orders independently of Bankruptcy Appellate Panel's decision, and bankruptcy court's denial of motion for reconsideration is reviewed for abuse of discretion); In re Greco, 113 B.R. 658, 662 (D. Haw. 1990).

IV.      ANALYSIS.

As a preliminary manner, this court notes that Roberts has waived several of the issues raised on appeal.  Although Roberts listed six issues for appeal, she failed to support several of them with arguments specific to those issues.  See ECF No. 13, PageID #s 47-50.  Issues raised by Roberts but not supported by specific argument will be disregarded.  See City of Emeryville v. Robinson, 621 F.3d 1251, 1261 (9th Cir. 2010) (the court "will not review issues which are not argued specifically and distinctly in a party's opening brief").

In addition, some of the issues raised in Roberts's appeal relate to matters considered and decided in Roberts I, not the instant case.  No notice of appeal has been filed in Roberts I.  See In re Septimo, 1:11-CV-00315 DAE/KSC, 2012 WL 702167, at *4 (D. Haw. March 5, 2012) (declining to address issues raised in

appellant's brief but irrelevant to bankruptcy order appealed from).  Thus, it is not appropriate to address those issues here.

The scope of this court's review will be limited to consideration of the following issues:  (1) whether the bankruptcy court erred in finding that Roberts lacked good faith in filing Roberts II; (2) whether the bankruptcy court abused its discretion in denying Roberts's motion for reconsideration; and (3) whether the AOAO has standing to remove the appeal from the Bankruptcy Appellate Panel to this court.

> ### A.   The Bankruptcy Court Properly Denied Roberts's Motion to Impose the Stay.

Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities," of most actions against a debtor, the debtor's property, and property of the bankruptcy estate.  11 U.S.C. § 362(a).  The automatic stay "protect[s] debtors by giving them temporary relief from creditors and protects creditors as a whole by avoiding a first-come first-served race to the debtor's assets."  Kommanditselskab Supertrans v. O.C.C. Shipping, Inc., 79 B.R. 534, 540 (S.D.N.Y. 1987).

In 2005, however, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act as a "comprehensive reform measure to curb abuses and improve fairness in the federal bankruptcy system."  Connecticut Bar Ass'n v. United States, 620 F.3d 81, 85 (2d Cir. 2010).  The statutory sections at issue

here, §§ 362(c)(3) and 362(c)(4), constituted one such reform.
Aimed at deterring abuses of the stay by serial filers,
§§ 362(c)(3) and 362(c)(4) prescribe the conditions by which the
stay under § 362(a) either terminates early or does not arise
automatically.

In particular, under 11 U.S.C. § 362(c)(3)(A), when a
debtor commences a second bankruptcy case within a year of the
earlier case's dismissal--as is the case here--the automatic stay
"shall terminate with respect to the debtor" for "any action
taken with respect to a debt or property securing such debt or
with respect to any lease . . . on the 30th day after the filing
of the later case."  11 U.S.C. § 362(c)(3)(A).

Upon timely motion by a party in interest, the
bankruptcy court may extend the stay, but only (1) "after notice
and a hearing completed before the expiration of the 30-day
period," and (2) "only if the party in interest demonstrates that
the filing of the later case is in good faith as to the creditors
to be stayed."  11 U.S.C. § 362(c)(3)(B).  The failure to satisfy
either of these conditions results in the automatic termination
of the stay.  Neither condition was satisfied here.  Accordingly,
the bankruptcy court did not err in denying Roberts's motion to
impose stay and her motion for reconsideration.

### 1.   Roberts's Motion to Impose Stay Was Untimely.

Roberts's motion to impose the stay was untimely.  Her motion was filed on October 2, 2014, thirty-eight days after she filed her second Chapter 13 case on August 25, 2014.  See Roberts II, Dkt. #s 3, 18.  The motion was therefore filed outside of the thirty-day period prescribed by Congress in 11 U.S.C. § 362(c)(3)(B).  Pro se litigants are not excused from compliance with the rules.  Warrick v. Birdsell, 278 B.R. 182, 187 (9th Cir. B.A.P. 2002) (noting that debtor's status as pro se litigant did not excuse her failure to understand and follow bankruptcy court rule governing time for appeal).

The untimely filing made it impossible for the bankruptcy court to hold a hearing before the thirty-day window expired--another prerequisite for an extension of the stay.  See id., Dkt. #s 31, 82.  The bankruptcy court denied the motion to impose the stay because it was not "filed, heard, and ruled upon before the expiration of the 30-day period[.]"  See Ortola, 2011 WL 7145793 at *5.

Roberts conceded at the hearing on October 29, 2015, that her motion was untimely.  See Roberts II, Dkt. # 82 ("It was an oversight on my part that I had let it go for 37 days instead of 30 days.").  This court affirms the bankruptcy court's order denying the motion to impose stay because the motion was untimely.

11

      2.      **The Bankruptcy Court Did Not Err in Finding That <u>Roberts II</u> Was Not Filed in Good Faith.**

Although the untimeliness of the motion to impose stay is, on its own, dispositive of Roberts's appeal, the court nonetheless also addresses whether the bankruptcy court erred in finding that Roberts had failed to show that she filed her second Chapter 13 case in good faith.  <u>See</u> <u>In re Ortola</u>, 2011 WL 7145793, at *3 ("The only time a 'good faith/bad faith' determination comes into play is when a party in interest timely moves for a continuation of the automatic stay in compliance with § 362(c)(3)(B)[.]").

Section 362(c)(3)(B) also requires a debtor seeking an extension of the stay to "demonstrate[] that the filing of the later case is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(3)(B).  In other words, the movant must prove that the case is a good faith attempt by the overextended debtor to put forth and carry out a confirmable plan to use the debtor's present and future income to repay creditors.

The burden is on the debtor to prove good faith by a preponderance of evidence.  <u>See</u> <u>In re Castaneda</u>, 342 B.R. 90, 95 (Bankr. S.D. Cal. 2006).  "[C]ourts look to the totality of the circumstances to determine whether the debtor has established the good faith required by § 362(c)(3)."  <u>In re Elliott-Cook</u>, 357 B.R. 811, 814 (Bankr. N.D. Cal. 2006).

That said, under § 362(c)(3)(C), a rebuttable presumption will arise that the second case was not filed in good faith under any of the following circumstances:

> (I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;

> (II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to--

>> (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);

>> (bb) provide adequate protection as ordered by the court; or

>> (cc) perform the terms of a plan confirmed by the court; or

> (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded--

>> (aa) if a case under chapter 7, with a discharge; or

>> (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; and

> (ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if,

13

> as of the date of dismissal of such case,
> that action was still pending or had been
> resolved by terminating, conditioning, or
> limiting the stay as to actions of such
> creditor[.]

11 U.S.C. § 362(c)(3)(C).  If the presumption of bad faith

arises, the movant must rebut the presumption by "clear and

convincing evidence to the contrary."  Id.; In re Castaneda, 342

B.R. at 94.

 Roberts failed to show that she filed Roberts II in

good faith.  See ECF No. 15-1, PageID # 175.  Her lone reference

to "good faith" was her statement in her reply that "Debtor's

Motion is filed in Good Faith," devoid of supporting evidence or

analysis.  See ECF No. 15-1, PageID #s 221-22; see In re

Castaneda, 342 B.R. at 96 ("[M]ere statements by the movant in

the motion do not carry any evidentiary weight.  The movant must

provide detailed, competent, evidence sufficient to satisfy all

elements of § 362(c)(3)(B) and, if applicable, to rebut the

presumption of bad faith in §§ 362(c)(3)(C)(i) and (ii).").  More

importantly, however, Roberts misses the point.  The law requires

a showing that her second bankruptcy case was filed in good

faith, not that Roberts's motion to extend the stay was filed in

good faith.  See In re Montoya, 342 B.R. 312, 315 (Bankr. S.D.

Cal. 2006).

 In addition to noting Roberts's failure to prove her

good faith, the bankruptcy court found that there was a

presumption of bad faith arising from the fact that there had not been a substantial change in Roberts's financial or personal affairs since the dismissal of the prior case, or any other reason to conclude her case would be concluded with a confirmed and fully performed plan.  See Roberts II, Dkt. # 82 ("Nothing in the motion explains what has changed or what circumstances would justify a second filing so soon after the bankruptcy."); id. ("The obligation on these motions is for the Debtor to show that the Debtor has acted in good faith, and it's not enough to say that the creditors are still doing things that you object to. You have to say something sort of objectively changed in your situation between your first case and second case that indicates you're making a good faith attempt to get things done, and it doesn't seem to me like things have really changed.  So I -- I don't think you've carried your burden[.]").

Under § 362(c)(3)(C)(i)(III)(bb), the presumption essentially focuses on whether a debtor files the second case with a realistic prospect of success because his or her circumstances have improved since the filing of the previous, unsuccessful case.  See, e.g., In re Collins, 335 B.R. 646, 652 (Bankr. S.D. Texas 2005) ("Section 362(c)(3)(C)(i)(III)(bb) asks the Court to determine whether the Debtor is likely to confirm a plan and perform under that plan.").

The bankruptcy court did not clearly err in finding that Roberts's financial and personal situation had not so substantially changed since the dismissal of the first case as to indicate that the second case would conclude with a confirmed plan that would be fully performed.  Indeed, a comparison of the schedules in Roberts I and Roberts II demonstrates that her financial situation at the time she filed her second case had worsened.  Compare Roberts II, Dkt. # 10, with Roberts I, Dkt. # 12.  By the time Roberts filed Roberts II, her total debt had increased, yet her monthly income, which she would rely on in large part to make any plan payments, had decreased by nearly $500.00.  Id.  To make matters worse for Roberts, she admitted at the hearing on the motion to impose stay that two of her properties were not marketable as a result of lava flows in the vicinity, thereby denying her the ability to rely on two significant assets to fund a proposed plan.  See Roberts II, Dkt. # 82; see also Roberts II, Dkt. # 36 (admitting that her Hawaiian Beaches lot "and her Hilonani Street home[,] are not marketable due to the June 27, 2014 lava flow from Pu'u O'o at Kilauea Volcano").  The rest of Roberts's financial situation, as evidenced by the other schedules, went generally unchanged from the time leading up to the dismissal of her first case to the filing of her second case.

The record thus supports a finding that, when Roberts filed her second case, she was in no better position to confirm and perform a viable Chapter 13 plan than in Roberts I.  The lack of improvement in her personal and financial affairs suggested that the outcome of her second bankruptcy case would not differ from the outcome in the first case, and led to a presumption of bad faith that went entirely unrebutted by Roberts.  See In re Jackola, 2011 WL 2518930, at *3 (Bankr. D. Haw. June 22, 2011) (quoting In re Elliott-Cook, 357 B.R. at 815-16 ("The most important indicia of good faith is a realistic prospect of success in the second case, contrary to the failure of the first case.").

Several other factors suggest Roberts's bad faith in filing Roberts II.  One such factor is "the debtor's motive in filing the second petition."  In re Elliott-Cook, 357 B.R. at 814.  This factor focuses on whether the debtor's motive in filing the second case is consistent with the general purpose of Chapter 13, which is to enable debtors to pay debts that have become too burdensome to meet without the help of the bankruptcy laws.  See, e.g., In re Stewart, 109 B.R. 998, 1003 (D. Kan. 1990); United States v. Devall, 704 F.2d 1513, 1515 (11th Cir. 1983) ("The purpose of a Chapter 13 plan is to permit an individual to pay his debts and avoid bankruptcy by making periodic payments to a trustee under bankruptcy court protection,

with the trustee fairly distributing the funds deposited to creditors until all debts have been paid." (citation and quotation marks omitted)).

Far from demonstrating good faith efforts to reorganize her finances so she could meet her obligations, Roberts's filings and arguments exhibit a singular and unyielding focus on accusing others of various improprieties.  See Roberts II, Dkt. # 82 (bankruptcy court noting that "All of her response has to do with what other people have allegedly done wrong.  Nothing in the motion explains what has changed or what circumstances would justify a second filing so soon after the bankruptcy.").  Roberts admits in her opening brief before this court that a large part of why she brought this case was to "get to the bottom of the financial affairs at Liona Kona."  ECF No. 13, PageID # 50.  By that measure, her motivation clearly deviates from Chapter 13's purpose of helping debtors find workable ways to repay their debts.  See, e.g., In re Blendheim, No. 13-35354, 2015 WL 5730015, at *6 (9th Cir. Oct. 1, 2015) ("a Chapter 13 proceeding, often called a 'reorganization,' is designed to encourage financially overextended debtors to use current and future income to repay creditors in part, or in whole, over the course of a three-to five-year period").  Roberts's motive further supports the bankruptcy court's finding of a lack of good faith on her part.

18

Still more conduct by Roberts suggests her bad faith. After the bankruptcy court denied Roberts's motion to extend the say, she attempted to transfer the Liona Kona property to the "Jin Dao Revocable Living Trust" via a quitclaim deed, forcing the AOAO to file an emergency motion to void the transfer. See Roberts II, Dkt. # 165. Roberts did not appear at the hearing on the emergency motion, and the bankruptcy court voided the transfer. See id., Dkt. # 170. Second, after filing Roberts II, Roberts also filed a Chapter 11 bankruptcy case, which the bankruptcy court dismissed because it found that the case had been filed in bad faith. See id., Dkt. # 162 (citing In re Roberts, Bankr. D. Haw. No. 15-00100). Both actions evidence Roberts's intent to use various legal means to delay foreclosure, and suggest that her filing of Roberts II was motivated by this same improper purpose.

The bankruptcy court did not err in holding that Roberts failed to satisfy the requirements for an automatic stay.

### B. Roberts Waived Her Argument that the Bankruptcy Court Abused Its Discretion in Denying Roberts's Motion for Reconsideration.

Roberts failed to provide any relevant argument in her opening brief regarding the order denying her motion for reconsideration. The court "will not review issues which are not argued specifically and distinctly in a party's opening brief." City of Emeryville v. Robinson, 621 F.3d 1251, 1261 (9th Cir.

19

2010).  Even if the court did address this issue, nothing in the record suggests that the bankruptcy court abused its discretion in denying Roberts's motion, which did not set forth an intervening change in controlling law, new evidence, or the need to correct clear error or prevent manifest injustice.  See White v. Sabatino, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006) (citing Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1178–79 (9th Cir. 1998)).

> ### C.   This Appeal Was Properly Transferred to This Court From the Ninth Circuit Bankruptcy Appellate Panel.

Roberts challenges the standing of the AOAO to remove the appeal from the Bankruptcy Appellate Panel to this court. While her standing arguments are not entirely clear, this court construes them liberally.

Standing to sue is a jurisdictional and prudential issue relating in civil cases to a plaintiff's ability to raise or assert a claim or proceeding.  See, e.g., Oregon Advocacy Ctr. v. Mink, 322 F.3d 1101, 1108-09 (9th Cir. 2003); see also Black's Law Dictionary (10th ed. 2014) (defining "standing" as "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right").  The party bringing a particular action has the burden of establishing standing.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (noting that "[t]he party invoking federal jurisdiction bears the burden of establishing [the] elements [of constitutional standing]"); Utah Shared Access

20

<u>Alliance v. Carpenter</u>, 463 F.3d 1125, 1137 (10th Cir. 2006) (stating that "[t]he burden to establish prudential standing is on the plaintiff bringing the action"). In this regard, lack of standing as a potential defense is to be used against the party attempting to raise a claim or appeal, not against the party who must defend against one.

Roberts first contends that the AOAO lacks "the legal capacity to oppose [her] Motion to Impose Stay." <u>See</u> ECF No. 13, PageID # 46. Roberts appears to be asking the court to allow her to appeal the bankruptcy court's order uncontested. This would contravene one of the main purposes of the standing doctrine, namely, to ensure "that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.] This is the gist of the question of standing." <u>Baker v. Carr</u>, 369 U.S. 186, 204 (1962). Insofar as Roberts is challenging the AOAO's ability to take part in the appeal based on its lack of standing, this court rejects her argument.

To the extent Roberts is challenging the AOAO's ability to transfer the appeal from the Bankruptcy Appellate Panel to this court, Roberts's argument also fails. Under Rule 8005 of the Federal Rules of Bankruptcy Procedure, a party may elect to have a bankruptcy appeal heard by the district court instead of the Bankruptcy Appellate Panel. <u>See</u> Fed. R. Bankr. P. 8005. A

21

party making such an election must file a statement of election within thirty days of service of the notice of appeal.  See id. The AOAO filed a timely election to have Roberts's appeal heard by this court and otherwise complied with Rule 8005.  See ECF No. 1-2.  Roberts's appeal was properly transferred to this court.

In contesting standing, Roberts may be challenging the validity of the AOAO's status as her creditor.  That is, Roberts might be arguing that the AOAO has no standing to participate in the case as a whole because the AOAO is not a valid creditor given its involuntary dissolution on January 30, 2002.

The AOAO's loss of corporate status in 2002, however, does not establish that the AOAO was, or is, an invalid condominium association.  After dissolution, the AOAO in fact continued on as a valid, albeit unincorporated, condominium association until 2009, when it was reincorporated.  See ECF No. 15-1, PageID #s 186-90.  Nothing in the AOAO's Bylaws, Articles of Incorporation, or applicable state law required the AOAO to maintain its corporate status as a precondition to being a valid condominium association.  In fact, the AOAO's 1997 Articles of Incorporation expressly permit the AOAO to dissolve its corporate status:

> Upon the dissolution of the corporation or the winding up of its affairs, the Unincorporated Association shall be simultaneously and automatically reactivated and reinstated; the assets of the corporation shall be distributed exclusively to the

22

> Unincorporated Association; and thereafter
> the Unincorporated Association shall operate,
> administer, maintain and manage the Project
> pursuant to the Act, the Declaration and the
> By-Laws as if the corporation had never
> existed.

Id., PageID # 196.  This is precisely what occurred here.

Nor does Roberts show that the AOAO's change in status violated any state law, thereby nullifying its status as a condominium association.  The record shows that the AOAO appeared to be active and in good standing with the Department of Commerce and Consumer Affairs throughout the time that Roberts has owed, but not paid, her maintenance fees.  Id., PageID # 188.  The AOAO's temporary loss of corporate status did not destroy its status as a valid condominium association that had the ability, as well as responsibility, to collect maintenance fees from Roberts and other condominium unit owners.

Roberts's challenge to the AOAO's standing to transfer the appeal from the Bankruptcy Appellate Panel to this court fails.

**V.       CONCLUSION.**

The court affirms the orders, as Roberts shows no entitlement to the relief requested.  The Clerk of Court is directed to enter judgment and to terminate this appeal.

23

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 16, 2015.



/s/ Susan Oki Mollway
Susan Oki Mollway
Senior United States District Judge

In re Sandra Jo Roberts, Civ. No. 14 00548 SOM/RLP; ORDER AFFIRMING BANKRUPTCY COURT ORDERS